## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *RONALD PEPIN,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:15-cv-00231-JDL* |
| | ) | |
| *GENERAL DYNAMICS-OTS, INC.,* | ) | |
| | ) | |
| *Defendant* | ) | |


### *RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

The defendant, General Dynamics-OTS, Inc., moves for summary judgment as to all claims asserted against it in this age discrimination in employment action. For the reasons that follow, I recommend that the court grant the motion.

### I.   Applicable Legal Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). "A dispute is genuine if 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Johnson v. University of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id*. (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In

determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Johnson,* 714 F.3d at 52.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (quoting *Clifford v. Barnhart,* 449 F.3d 276, 280 (1st Cir. 2006) (emphasis omitted)); Fed. R. Civ. P. 56(c).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## B.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify

such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id.*

Local Rule 56 directs that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id.*; *see also, e.g., Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II. Factual Background

The parties' statements of material facts, credited to the extent that they are either admitted or supported by record citations in accordance with Local Rule 56, with disputes resolved in favor of the plaintiff as the nonmovant, reveal the following.[1]

The defendant, which changed its name from General Dynamics Armament and Technical Products to General Dynamics-OTS, Inc. ("GD-OTS") in August 2013, operates a manufacturing facility in Saco, Maine, where it manufactures military weapons for the United States Department

---

[1] Statements that are qualified are assumed to be admitted subject to that qualification, unless a qualification indicates otherwise. To the extent that I have incorporated one side's qualification into the statement of the other, I have determined that the qualification is supported by the record citation(s) given. I have omitted qualifications that are unsupported by the citation(s) given or are redundant. To the extent that I have taken into consideration a denial of a statement, I have determined that the denial is supported by the citation(s) given.

3

of Defense.  Defendant General Dynamics-OTS, Inc.'s Statement of Material Facts in Support of Motion for Summary Judgment ("Defendant's SMF") (ECF No. 32) ¶ 1; Plaintiff's Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (ECF No. 39) ¶ 1.  In 2013, hourly production workers at GD-OTS, including the plaintiff, were represented by Local 406 New England Joint Board, UNITE HERE (the "Union"), and were subject to a collective bargaining agreement ("the CBA") between GD-OTS and the union, dated November 5, 2012.  *Id*. ¶ 2.  The hourly workers were also subject to the defendant's Work Rules & Policies and General Dynamic's Standards of Business Ethics and Conduct.  *Id*.

GD-OTS has an established policy that prohibits all forms of unlawful harassment, discrimination, and retaliation, including on the basis of age.  *Id*. ¶ 3.  This policy is distributed to all of its employees.  *Id*.  GD-OTS also provides regular training to all of its employees regarding its policy against unlawful harassment, discrimination, and retaliation, including instruction on what constitutes unlawful harassment, discrimination, and retaliation and how to make a complaint of harassment, discrimination, or retaliation.  *Id*.

Pepin attended ethics training while employed at GD-OTS, which included training on GD-OTS's policy against sexual harassment.  *Id*. ¶ 4.  He also received General Dynamics' Standard of Business and Ethics Conduct.  *Id*.  Other than Pepin's complaint of age discrimination, GD-OTS has not had a complaint of age discrimination since GD-OTS acquired Saco Defense Corp. in May 2000.  *Id*. ¶ 5.[2]

---

[2] The plaintiff objects to this portion of paragraph 5 of the defendant's statement of material facts on the basis that "the Jones Affidavit points to no credible evidence to support its claim that GD-OTS has not had a complaint of age discrimination since it acquired Saco Defense Corp. in 2002."  Plaintiff's Responsive SMF ¶ 5.  The sworn affidavit of Suzanne Jones ("Jones Aff.") (ECF No. 32-20) is itself evidence and demonstrates the basis for the declarant's knowledge.  Jones Aff. ¶¶ 2, 7.  In the absence of contradictory information of evidentiary quality from the plaintiff, the court may rely on such evidence in evaluating a motion for summary judgment.  The plaintiff's objection is overruled.

Pepin was hired by Saco Defense Corp., GD-OTS's corporate predecessor, o August 13, 1979, as an assembler. *Id*. ¶ 6. In 1984, he became an NC miller. *Id*. GD-OTS acquired Saco Defense Corp. on or about May 11, 2000, and Pepin became an employee of GD-OTS. *Id*. ¶ 7. In 2004, Pepin became a metal removal specialist and remained in that position throughout his tenure with GD-OTS. *Id*. In June 2013, GD-OTS had a reduction in force and laid off approximately 110 employees at the Saco location. *Id*. ¶ 8.[3] Pepin was not selected for layoff. *Id*.

On August 12, 2013, Pepin had a verbal altercation with a co-worker, Neil Lagasse. *Id*. ¶ 9. The altercation was loud and profane. *Id*. As a result of the altercation, on August 15, 2013, GD-OTS gave Pepin and Lagasse each a one-day suspension without pay, for unacceptable workplace behavior. *Id*. ¶ 11. The union did not grieve the suspension. *Id.* On August 19, 2013, GD-OTS gave Pepin a three-day suspension without pay for failure, on August 16, 2013, to gauge parts at the required frequency to make sure that they met customer specifications. *Id*. ¶ 14. The union did not grieve this suspension. *Id*.

On August 19, 2013, Lagasse told Chuck Bates, Manager, Staff Development, that Pepin had sexually harassed Sally Bartlett, a former employee, while she was employed at GD-OTS. *Id*. ¶ 15. On or about August 19, 2013, Bates spoke with Bartlett about the allegations. *Id*. ¶ 16.[4] Bartlett told Bates that she felt sexually harassed by Pepin while she worked with him, and that he showed her pictures of his penis and of his girlfriend masturbating. *Id*. She suggested that Bates speak to Patty Borton, one of her former co-workers. *Id*. She told Bates that she did not complain

---

[3] The plaintiff denies this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 8, but the denial does not address the facts set forth herein, as stated in this paragraph, which accordingly are deemed admitted.

[4] The plaintiff purports to deny this and subsequent paragraphs of the defendant's statement of facts, but he submits only a denial of the truth of the statements that were made to Bates. Plaintiff's Responsive SMF ¶¶ 16-19 & Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF") (included in Plaintiff's SMF beginning at 11) ¶¶ 10-18, which are the only evidence cited in support of the denials of these paragraphs. This "denial" does not challenge the fact that the recounted statements were made to Bates, only their veracity, and the paragraphs are accordingly deemed admitted for the purpose of establishing that they were made.

about Pepin while she worked at GD-OTS because she was afraid that Pepin would retaliate against her. *Id*. ¶ 17.  She decided not to return to work at GD-OTS because of Pepin.  *Id.*

Bates spoke with Borton on August 19, 2013.  *Id.* ¶ 18.  She said that she had felt sexually harassed by Pepin.  *Id*.  She said that Pepin would show her pictures of his penis on his cell phone, sat so that his penis was exposed to her, and often made sexual comments or gestures that made her very uncomfortable and caused her a lot of emotional distress.  *Id*.  Borton told Bates that she did not complain about Pepin because she was afraid of losing her job and that Pepin would retaliate against her.  *Id*. ¶ 19.

As part of GD-OTS's investigation into the complaints against Pepin, on August 19, 2013, Bates also interviewed Rick Morin, CNC operator, Lagasse, and Mark Lessard, CNC operator, all of whom had worked in the same area as Bartlett and Borton at the relevant time.  *Id*. ¶ 20.  Morin told Bates that he was reluctant to participate in the investigation for fear of retaliation from Pepin, but acknowledged knowing about the sexually explicit photos that Pepin was allegedly showing at work. *Id*. ¶ 21.[5]  He stated that he remembered Bartlett telling Pepin to "get away from me[.]  I don't want to see pictures of your penis."  *Id*.

Lagasse told Bates that he was aware of the photos that Pepin was allegedly showing at work.  *Id*. ¶ 22.[6]  He also said that he knew about Pepin's use of inappropriate language and comments that Pepin made about Bartlett's sexual orientation.  *Id*.  Lessard told Bates that he was aware of the sexually explicit photos that Pepin was allegedly showing to people at work.  *Id*. ¶ 23.[7]  He also said that Pepin directed inappropriate conduct at Bartlett, who did not deserve it.  *Id*.

---

[5] See footnote 4 above.
[6] See footnote 4 above.
[7] See footnote 4 above.

Following his investigation, Bates concluded that Pepin had made inappropriate sexual comments, used inappropriate sexual language and pictures, and made inappropriate gestures in the workplace for several years, through at least December 2012. *Id*. ¶ 26.  Based on his findings, Bates recommended that Pepin be terminated from employment. *Id*. ¶ 27.[8]  On August 20, 2013, Bates prepared a Request for Termination based on the results of his investigation of Pepin's conduct. *Id*. ¶ 28.  He also prepared a memorandum summarizing the results of his investigation and the reason for termination. *Id*.

Also on August 20, 2013, Bates notified Denise Bailey, secretary of the union, that a sexual harassment complaint had been filed against Pepin by some of his female co-workers, and that GD-OTS would be suspending Pepin pending discharge. *Id*. ¶ 29.  On August 21, 2013, the operations, human resources, and legal departments of GD-OTS approved the termination of Pepin's employment. *Id*. ¶ 30.  On that day, Bates sent a suspension discharge notice to Pepin by certified mail with a copy to the union. *Id*. ¶ 31.  According to the notice, the suspension became an automatic discharge on the seventh regularly scheduled workday after the date of the notice, unless notification to the contrary was provided by GD-OTS. *Id*.

On August 22, 203, Bates and Marc Parent, president of the union, met with Pepin to give him the notice of disciplinary action. *Id*. ¶ 32.  During the meeting, Pepin denied engaging in any of the conduct identified in the notice. *Id*.  Pepin, Parent, and Bates signed the notice. *Id*.  On or about August 26, 2013, the union filed a grievance regarding Pepin's discharge. *Id*. ¶ 33.  Pepin told Parent and the union his side of the story, denied sexually harassing his co-workers, and denied engaging in any of the conduct listed in the notice of disciplinary action. *Id*.

---

[8] I do not include that portion of paragraph 27 of the defendant's statement of material facts that is denied by the plaintiff.  Plaintiff's Responsive SMF ¶ 27.

On August 28, 2013, Bobbi Courtois, another of Pepin's co-workers, told Bates that, years before, Pepin had reached down her blouse and touched her breast. *Id*. ¶ 34.[9] Sally Bartlett, Patty Borton, and Bobbi Courtois each later signed an affidavit verifying the information provided to Bates during the investigation of the complaints against Pepin. *Id*. ¶ 35.[10]

On or about August 28, 2013, Bailey began an investigation of the allegations of sexual harassment against Pepin, which included vulgar language in the workplace, showing sexual pictures to other employees, inappropriately showing private body parts to another employee, and discussing the sexual orientation of other employees. *Id*. ¶ 36. On or about September 11, 2013, Bailey spoke with Bartlett, a former machine operator for GD-OTS, about her complaints against Pepin. *Id.* ¶ 37.[11] Bartlett told Bailey that Pepin routinely used vulgar language, and showed her pictures of his penis and of his girlfriend masturbating. *Id*. Bartlett told Bailey that she decided not to return to work at GD-OTS because of Pepin's conduct. *Id.*

On or about September 12, 2013, Bailey spoke with Patty Borton, an inspector for GD-OTS, about her complaints against Pepin. *Id*. ¶ 38.[12] Borton told Bailey that Pepin talked about sex all the time and showed her pictures of his penis. *Id*. She also told Bailey that Pepin showed her his penis through the bottom of his shorts while he sat at his work station. *Id*. Bartlett and Borton did not report Pepin's conduct sooner because they feared retaliation. *Id*. ¶ 39.[13]

Based on the results of Bailey's investigation, the union withdrew the grievance regarding Pepin's discharge. *Id*. ¶ 40.

---

[9] See footnote 4 above.
[10] See footnote 4 above.
[11] See footnote 4 above.
[12] See footnote 4 above.
[13] See footnote 4 above.

In August 2013, the average age of GD-OTS's employees was 50.25.  *Id*. ¶ 41.[14]  In May

2014, nearly 60% of GD-OTS's employees were in their 50s, 60s, and 70s.  *Id*.  In May 2014, the

average age of GD-OTS's employees was 50.18.  *Id*. ¶ 42.[15]  In January 2016, the average age of

GD-OTS's employees was 50.24.[16]

Stan Doran, one of Pepin's supervisors, told Pepin several times in 2009 that he should

quit his job if he did not like the way things were done.  *Id*. ¶ 44.[17]  Doran left his employment

with GD-OTS prior to Pepin's termination.  *Id*.  Brian Boner, another supervisor, wrote Pepin up

for smoking in a non-smoking area.  *Id*. ¶ 45.  Patricia Smith, another supervisor, harassed Pepin

about smoking, as she did to all smokers.  *Id*. ¶ 46.  Carl Waterman, another supervisor, sent Pepin

home early for "lack of work" when he did have work to do, approximately 10 years ago.  *Id*. ¶ 47.

Waterman was "always trying to get [Pepin] to do work, just normal supervision stuff."  *Id*. ¶ 48.

Mark Estler called Pepin profane names, made infant noises, hid Pepin's tools and personal

belongings, and threw trash and debris at Pepin, approximately nine or 10 years ago.  *Id*. ¶ 49.

Pepin complained to Bates about Estler's conduct.  *Id*. ¶ 50.  Bates did not address Estler's conduct,

so Pepin reported the issue to Gary LaPierre.  *Id*.  LaPierre reprimanded Bates.  *Id*. ¶ 51.  The

conduct stopped after LaPierre addressed the issue.  *Id*.

---

[14] The plaintiff objects to this paragraph of the defendant's statement of material facts, asserting that it is unsupported by the record and that statistical information must be "subject[ed] to an evaluation of credibility by a factfinder." Plaintiff's Responsive SMF ¶ 41.  To the contrary, the information is properly supported by the Jones affidavit, and the admissibility of statistical evidence does not involve evaluation of credibility.  The authority cited by the plaintiff does not support his position.  The objection is overruled.

[15] The plaintiff makes the same objection to this paragraph of the defendant's statement of facts as he made to the previous paragraph.  The objection is overruled for the reasons stated in footnote 14 above.

[16] See footnotes 14-15 above.

[17] The plaintiff admits this paragraph "[t]o the extent that these events occurred," but does not deny that they occurred. Plaintiff's Responsive SMF ¶ 44.  He then "objects to and denies Defendant's characterization of the events described" in this paragraph and paragraphs 45-59 as "his only evidence of age discrimination."  *Id*.  To the limited extent that any of the sentences in this and subsequent paragraphs of the defendant's statement of material facts may reasonably be construed as characterizations of facts, I do not include those sentences in my recitation of the facts.

Pepin worked for GD-OTS or its predecessors for 34 years and was in the top pay grade for labor positions. *Id*. ¶ 52. Pepin believes that his supervisors were looking for any little reason to terminate employees to save money. *Id*. Pepin believes that his co-workers were lying about him because a co-worker repeatedly reported to work drunk and he was accused of turning her in; he had a fight with Lagasse and Lagasse was a friend of one of the women who complained; he had a high-paying job and there was a lot of jealousy; and he stepped on people's toes when he tried to show them how to run their machines. *Id*. ¶ 56. Pepin also contends that the stated reason for his termination was untrue because Bates was biased and had a vendetta against him due to the incident with Estler. *Id*. ¶ 57.

In 1991, Pepin contested his discharge after the union declined to represent him. Plaintiff's SMF ¶ 3; Defendant General Dynamics-OTS, Inc.'s Reply to Plaintiff's Statement of Additional Material Facts and Response to Plaintiff's Objections to Defendant's Statement of Material Facts ("Defendant's Responsive SMF") (ECF No. 45) ¶ 3. The case was settled and he was returned to employment. *Id*.

Prior to his dispute with Lagasse on August 12, 2013, Pepin had never received any notice from GD-OTS that allegations of sexual harassment or inappropriate behavior had been made against him. *Id*. ¶ 6. Pepin denies all of the allegations of misconduct included in the discharge notice. *Id*. ¶ 10.

After a reduction in force at GD-OTS from June 14 to 28, 2013, Pepin was moved to the cannon barrels product line, working as a broacher, rifling operation, with no change in pay. *Id*. ¶ 25. After GD-OTS terminated Pepin's employment, the broacher, rifling positon was awarded to an internal employee. *Id*. ¶ 26. That employee was 47 years old at the time of Pepin's termination. *Id*. ¶ 29. As of December 2012, GD-OTS employed nine metal removal specialists

10

and one leadperson metal removal specialist; as of December 2013, it employed seven metal removal specialists and no leadperson. *Id.* ¶¶ 30-31.

The stated reason for Pepin's termination was sexual harassment, harassing language, and inappropriate comments about sexual orientation.  *Id.* ¶ 34.  The termination notice does not mention performance issues.  *Id.*

### III.  Discussion

### A.  Applicable Law

The complaint raises claims of age discrimination under federal law (the Age Discrimination in Employment Act ("ADEA")) and state law (the Maine Human Rights Act). Complaint (ECF No. 1) ¶¶ 15-[28].[18]

"The ADEA makes it illegal for an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Suarez v. Pueblo Int'l, Inc*., 229 F.3d 49, 53 (1st Cir. 2000) (quoting 29 U.S.C. § 623(a)(1)).  In similar fashion, the MHRA makes it illegal, in relevant part, for any employer to discharge an employee "because of" age. 5 M.R.S.A. § 4572(1)(A).

The defendants suggest that ADEA analysis is dispositive of the plaintiff's MHRA age discrimination claim.  Defendant General Dynamics-OTS, Inc.'s Motion for Summary Judgment ("Motion") (ECF No. 31) at 9 n.1.  The plaintiff apparently disagrees.  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opposition") (ECF No. 38) at 7-8.  The defendant's position is correct.  *Phair v. New Page Corp*., 708 F.Supp.2d 57, 63 n.4 (D. Me. 2010) ("Maine courts apply the MHRA in accordance with federal anti-discrimination

---

[18] Count II, the state law count, misnumbers its paragraphs as ¶¶ 16-21, instead of ¶¶ 23-28.

law, including the ADEA. Thus, the Court's analysis pertains to both the federal and state claims.") (citations omitted).

To prove an ADEA violation, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc*., 129 S. Ct. 2343, 2351 (2009). "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Id*. at 2349.

"Direct evidence . . . consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision[.]" *Patten v. Wal-Mart Stores East, Inc*., 300 F.3d 21, 25 (1st Cir. 2002) (citation and internal quotation marks omitted). "The high threshold for this type of evidence requires that mere background noise and stray remarks be excluded from its definition." *Id*. (citations and internal quotation marks omitted). "A statement that can plausibly be interpreted two different ways – one discriminatory and the other benign – does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Id*. (citation and internal quotation marks omitted).

"Where, as here, an employee lacks direct evidence that the employer's actions were motivated by age animus, the *McDonnell Douglas* burden-shifting framework dictates the progression of proof." *Suarez*, 229 F.3d at 53.

"The first step in this progression involves the employee's prima facie case." *Id*. "To climb this step, an employee suing under the ADEA for termination of employment must adduce evidence which, if believed, suffices to prove four facts: (1) that he was at least forty years old when he and his employer parted company; (2) that his job performance met the employer's legitimate expectations; (3) that he lost his position through an adverse employment action

attributable to the employer (typically, a firing); and (4) that the employer had a continuing need for the services that he had been rendering." *Id*.

Once a plaintiff establishes a *prima facie* case, the *McDonnell Douglas* rubric shifts the burden to the defendant to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000) (citation and internal quotation marks omitted). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Id*. (citation and internal quotation marks omitted).

Once the defendant meets this burden, "the *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Id*. at 142-43 (citations and internal quotation marks omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id*. at 143 (citation and internal quotation marks omitted). In attempting to satisfy this burden, a plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id*. (citations and internal quotation marks omitted).

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. at 148. *See also, e.g., Domínguez-Cruz v. Suttle Caribe, Inc*., 202 F.3d 424, 430-31 (1st Cir. 2000) (once plaintiff makes out *prima facie* case and defendant meets its burden of production, "the focus [at summary judgment] should be on the ultimate issues: whether, viewing the aggregate package of proof offered by the plaintiff and taking all inferences

13

in the plaintiff's favor, the plaintiff has raised a genuine issue of fact as to whether the termination of the plaintiff's employment was motivated by age discrimination.") (citations and quotation marks omitted).

## B. The *Prima Facie* Case

The defendant contends that the plaintiff cannot establish a *prima facie* case of age discrimination because "he was not meeting GD-OTS's performance expectations[,]" Motion at 10, the second element of the *prima facie* framework.  In support of this assertion, it offers only the statement that the "Plaintiff was on progressive discipline, due to his job performance, prior to his termination." *Id.*  The paragraphs of the defendant's statement of material facts cited in support of this brief argument establish that Pepin was suspended for three days without pay two days before his employment was terminated on the basis that he failed to gauge parts correctly while his reprimand for the altercation with Lagasse was still in effect.  Defendant's SMF ¶¶ 9-14.

In response, the plaintiff asserts his 34 years' employment by GD-OTS and its predecessors is sufficient evidence to meet the "relatively low threshold" to establish any element of a *prima facie* case, citing *Zapata-Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 44 (1st Cir. 2002), and, in this instance, to establish the second element of his claim for purposes of summary judgment analysis.  Opposition at 9-10.    The First Circuit's opinion in *Vélez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 448 (1st Cir. 2009), lends some support to the plaintiff's position (24-year period of employment without discipline or indications of deficient performance, together with promotion, evidence that plaintiff performed satisfactorily).

The defendant asserts that Pepin's verbal altercation with Lagasse and suspension for failing to gauge parts correctly, along with his failure to file a grievance about either, distinguish this case from *Vélez* and establish that Pepin was not meeting its performance expectations and thus was not qualified for the position.   Defendant General Dynamics-OTS, Inc.'s Reply to

14

Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Reply") (ECF No. 44) at 1-2. While the altercation for which both Pepin and Lagasse were disciplined might well demonstrate "unacceptable workplace behavior," *id.* at 1, it does not bear on Pepin's job performance. The 3-day suspension for failure to gauge parts correctly might carry more weight in this analysis if another employee had not been "written-up multiple times. . . using the same machinery[,]" Plaintiff's SMF ¶ 5, Defendant's Responsive SMF ¶ 5, making it unlikely that a single such incident could be equated to overall job performance that did not meet the employer's expectations.

This court has described the second element of the *prima facie* case for age discrimination as "whether the employee has a record of performing acceptably and meeting the demands of his job." *Phair*, 708 F.Supp.2d at 64, citing *Brennan c. GTE Gov't Sys. Corp.*, 150 F.3d 21, 27 (1st Cir. 1998); *see also Webb v. Town of Orono*, No. 1:14-cv-00246-JCN, 2015 WL 7574757, at *5 (D. Me. Nov. 25, 2015) (evidence that plaintiff had nearly 30 years of positive employment evaluations sufficient for this element of *prima facie* case)*; Putnam v. Regional Sch. Unit 50*, No. 1:14-cv-00154-JAW, 2015 WL 5440783, at *26 (D. Me. Sept. 15, 2015) (44-year career in various leadership roles in school system sufficient to demonstrate existence of triable issue  as to plaintiff's ability to meet employer's legitimate expectations). A single failure to meet an employer's expectations, for which the employer imposed only a 3-day suspension, which had apparently been imposed on another employee several times before termination, is not enough to deprive the plaintiff of the opportunity to prove this element at trial.

On the showing made, the plaintiff has established the necessary *prima facie* case.

## C.  Employer's Reason

GD-OTS contends that it has articulated a legitimate, nondiscriminatory reason for terminating Pepin's employment: violation of its established policy against sexual harassment in

the workplace.  Motion at 10.  Contrary to GD-OTS's argument, the plaintiff bears no burden at this stage of the summary judgment analysis to "offer proof that: (1) GD-OTS's proffered reason for its action [is] a pretext; and (2) the true reason was unlawful discrimination." *Id.*  Rather, as the Supreme Court has stated, the burden at this stage shifts to the employer to demonstrate that it had a legitimate, nondiscriminatory reason for its action.  After that, the court will evaluate whether the employee plaintiff has offered sufficient evidence that the employer's stated reason is a pretext for unlawful discrimination on the basis of age.  *Reeves*, 530 U.S. at 143.

I conclude that GD-OTS has provided sufficient evidence of its articulated reason for terminating Pepin's employment.  The plaintiff does not seriously dispute this point.  Opposition at 14-17.

### D.  Pretext

The plaintiff must offer evidence that GD-OTS's stated reason for terminating his employment was a pretext and that the actual reason was discrimination based on his age, sufficient to show that his ability to prove pretext "turns on a genuine issue of material fact."  *Soto-Feliciano v. Villa Cofresí Hotels, Inc.*, 779 F.3d 19, 23 (1st Cir. 2015).  "[T]he critical question is whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his age[,]" and the plaintiff "must do more than merely impugn the veracity of the employer's justification."  *Id*. at 25 (citations and internal quotation marks omitted).  A plaintiff must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination."  *Id.*

Pepin devotes much of the responsive portion of his brief to his "adamant' denial of the episodes of sexual harassment reported to the employer during its investigation.  Opposition at 14-17.  This is precisely the impugning of the veracity of the employer's justification that the First

16

Circuit has found insufficient to withstand a motion for summary judgement. *See Bennett v. Saint-Gobain Corp.*, 453 F.Supp.2d 314, 324 (D. Mass. 2006) ("Where. . . the employer's reason for termination is based on the results of an investigation into alleged misconduct by the plaintiff, the inquiry is not whether the plaintiff's version of events is true, but whether the decision-maker reasonably believed that the plaintiff had engaged in misconduct."). Contrary to Pepin's contention, *id.* at 15, 17*,* the mere fact that the employee adamantly denies the allegations upon which the employer based its adverse action is not enough to entitle the employer to an evaluation of his credibility by a jury. *See, e.g., Plumlee v. City of Kennedale*, 795 F.Supp.2d 556, 565 (N.D. Tex. 2011) (a plaintiff's self-serving denial of allegations of misconduct fails to create issue of fact as to pretext); *Morales-Figueroa v. Banco Bilbao Vizcaya Argentaria*, 550 F.Supp.2d 220, 226-27 (D.P.R. 2007) (age discrimination plaintiff's denial of alleged misconduct completely irrelevant and immaterial for purposes of employer's motion for summary judgement "because there is no dispute as to the fact that [the plaintiff] denied the alleged misconduct;" question is whether decision-maker believed what they had been told by individuals interviewed in course of investigation). The authority that he cites in support of his argument, *Goodrich v. Wellpoint, Inc.*, No. 2:14-cv-00037-JDL, 2015 WL 4647907, at *5 (D. Me. Aug. 5, 2015), does not hold to the contrary. In that ADA case, the plaintiff proffered evidence from two independent witnesses that directly contradicted the employer's stated nondiscriminatory reason thus creating "inconsistencies in [the] employer's case." *Id*.

Pepin also attacks the investigations conducted by Bates and Bailey, asserting, *inter alia*, that their refusal to hear his side of the story, an assertion that GD-OTS denies, "critically undermines the reasonableness of GD-OTS's belief that Mr. Pepin engaged in harassment."

Opposition at 16.  This argument in support of pretext fails as well.  *Plumlee*, 795 F.Supp.2d at 564; *Morales-Figueroa*, 550 F.Supp.2d at 226.

Pepin contends that Bates and/or Bailey should have immediately questioned the reliability of the accusations made against him because they came from Lagasse "and his friends," and he and Lagasse had been disciplined for an altercation "mere days prior."  Opposition at 17.  There is no evidence in the summary judgment record to support the assertion that Bartlett, Borton, Morin, Lessard, and Courtois were anything more than co-workers or former co-workers of both Pepin and Lagasse, and certainly no evidence of any particularly friendly relationships between any of these individuals and Lagasse.  Indeed, Bartlett, Borton, and Courtois all signed affidavits verifying the information that they provided to Bates during his investigation.  Defendant's SMF ¶ 35.[19]

Finally, Pepin proffers as proof of pretext that the employee identified by GD-OTS as his replacement "was paid approximately $7 per hour less than Mr. Pepin was paid for doing the same job.  Further, he was younger than Mr. Pepin by five years[.]"  Opposition at 17-18.  As GD-OTS points out, Reply at 5 n.3, the fact that a replacement employee was five years younger than the terminated employee, but also over 40, is not evidence that a "substantially younger" person was hired, as is required by the applicable legal standard.  *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).  Furthermore, lower pay to a replacement is not evidence of discrimination based on age.  *Oliver v. St. Luke's Dialysis, LLC*, No. 1:10-CV-2667, 2011 WL 3585462, at *5 (N.D. Ohio Aug. 11, 2011) (and cases cited therein); *Santichen v. Greater*

---

[19] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but only states that he "denies the substance of the statements" and notes that the affidavits were signed "approximately one month **after** Mr. Pepin was terminated."  Plaintiff's Responsive SMF ¶ 35 (emphasis in original).  Again, the question before the court is not whether what these individuals told Bates was true, but rather whether it was reasonable for the employer to believe them.  The affidavits make GD-OTS's reliance on these statements even more reasonable than it would have been without them.

*Johnstown Water Auth.*, Civil Action No. 06-72J, 2008 WL 868212, at *16 (W.D. Pa. Mar. 31, 2008); *Kraemer v. Franklin & Marshall College*, 909 F.Supp. 268, 270-71 (E.D. Pa. 1995) (and cases cited therein).

Pepin has failed to present sufficient evidence of pretext.  Summary judgement for the defendant is, therefore, appropriate.

### E.   Punitive Damages

If the court adopts my recommended decision to grant summary judgment to GD-OTS, there will be no need to reach Pepin's claim for punitive damages.  I address them briefly here in the event that the court rejects my recommended decision.

Pepin concedes that he is not entitled to punitive damages on his claim under the federal ADEA.  Opposition at 18.  He presses his claim for punitive damages under the Maine Human Rights Act, asserting that he "has offered evidence that GD-OTS acted with malice or reckless indifference to Mr. Pepin's statutorily protected rights."  *Id*.  That is the applicable legal standard. 5 M.R.S.A. § 4613(2)(B)(8)(c).  A plaintiff claiming such damages must prove his entitlement by clear and convincing evidence.  *Batchelder v. Realty Resources Hospitality, LLC*, 2007 ME 17, ¶ 22, 914 A.2d 1116, 1124.

On the evidentiary showing made, Pepin cannot prevail on his argument that the facts that (1) "GD-OTS intentionally disregarded the dubious reliability of Mr. Lagasse's, and his friends', accusations," (2) only spent one day investigating the allegations, and (3) did not seek any input from Pepin would allow a jury to find that GD-OTS terminated his employment in the face of a perceived risk that its actions would violate the MHRA,[20] Opposition at 19.  Even when accepted

---

[20] *See, e.g., Stark v. Hartt Transp. Sys., Inc.*, 37 F.Supp.3d 445, 494 (D. Me. 2014).

for purposes of the defendant's motion, these facts do not establish, singly or collectively, by clear and convincing evidence, that the defendant acted with malice or reckless indifference.

Accordingly, it is not necessary to reach GD-OTS's argument that it has made good-faith efforts to comply with the requirements of the MHRA such that it is entitled to summary judgment on the plaintiff's claim for punitive damages.  Motion at 15-16.

### IV. Conclusion

For the foregoing reasons, I recommend that the court **GRANT** the defendant's motion for summary judgment.

### _NOTICE_

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 23rd day of November, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge